JAMES H. McDADE *vs.* DEPARTMENT OF INSTITUTIONS OF BOSTON & another.

LOUIS GRAPPI *vs.* DEPARTMENT OF INSTITUTIONS OF BOSTON.

Suffolk.   March 16, 1925. — April 17, 1925.

Present: RUGG, C.J., PIERCE, WAIT, & SANDERSON, JJ.

*Boston.   Suffolk County.   Civil Service*, Removal of veteran.

Under the statutory provisions in force in 1924, the city of Boston, and not the county of Suffolk, had the government, the control, the discipline and the management of the several houses of correction in Suffolk County.

Veterans, who, respectively, held the positions of deputy master of the house of correction at Deer Island and of an officer and carpenter in the Suffolk County house of correction, cannot be removed from office until there has been compliance with the provisions of G. L. c. 31, § 26.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on November 19, 1924, for a writ of mandamus to compel the respondents David J. Johnson, commissioner of the Department of Institutions of the City of Boston, and James L. Molloy, master of the house of correction at Deer Island, to reinstate the petitioner, a veteran under G. L. c. 31, § 21, to the position of deputy master of the house of correction at Deer Island, from which he alleged he had been unlawfully removed. Also, a

PETITION, filed in the same court on August 5, 1924, for a writ of mandamus ordering the respondent Johnson "to show proper cause and to make such legal determination as is required on the obligation of your petitioner," under G. L. c. 31, § 26.

The first petition was heard by *Crosby*, J., and the second by *Carroll*, J. Facts found are described in the opinion. In each case the single justice ruled that the petitioner was entitled to have the provisions of G. L. c. 31, § 26, observed for his benefit, ordered the writ of mandamus to issue, and reported the case to the full court for determination.

*P. N. Petrocelli*, assistant corporation counsel, for the respondents.

*E. Field*, for the petitioner McDade.

*P. C. Borré*, for the petitioner Grappi.

PIERCE, J. These are petitions for writs of mandamus to compel the respondents to reinstate McDade to his position as deputy master of the house of correction at Deer Island, and to reinstate Grappi to his position as an officer and carpenter in the Suffolk County house of correction. It is admitted by the respondent Johnson that each petitioner is a veteran within the meaning of G. L. c. 31, § 21. It is admitted that McDade held the office and performed the duties of deputy master of the house of correction at Deer Island from December 27, 1922, until November 17, 1924, when he was ordered to leave Deer Island. It is admitted that Grappi was employed in the Suffolk County house of correction as a carpenter and officer from March 21, 1923, until July 15, 1924, when he was removed by the

respondent Johnson for reasons specifically given him in writing within twenty-four hours after removal, in accordance with the provisions of G. L. c. 31, § 43.   Each petitioner contends that he was entitled to a hearing before his removal, under the provisions of G. L. c. 31, § 26; while the respondents contend that neither veteran is or was in the service of the city of Boston, but was in the service of the county of Suffolk, and that the provisions applicable to the removal of each petitioner are those of G. L. c. 31, § 43, and not those of G. L. c. 31, § 26.   It is not contended that G. L. c. 31, § 26, applies to a county employee, nor that proper proceedings were had for the removal of either petitioner if such employee was in the service of the city of Boston and therefore within the protection of G. L. c. 31, § 26.

The controlling question is: Does the city of Boston or the county of Suffolk have the government, the control, the discipline and management of the several houses of correction in Suffolk County?   Before St. 1831, c. 65, § 1, Boston and Chelsea constituted the county of Suffolk.   The statute referred to provided that the connection between Boston and Chelsea should continue upon certain conditions, one of which was that Chelsea should by good and sufficient deeds assign and release to the city of Boston all its right, title and interest in all county property and should also relinquish to the city of Boston "the exclusive care, management, jurisdiction and regulation of the court houses, jails, house of correction, and all other lands, buildings and establishments deemed county property, or in which the said county of Suffolk claims, or has claimed or exercised any care, management, jurisdiction or regulation as aforesaid."   This act was to take effect upon its acceptance by the town of Chelsea within three months from the passing of the act.   The act was accepted and a deed was executed and was recorded with Suffolk Deeds, Liber 355, Folio 1.   By Rev. Sts. c. 14, § 7, it was provided that in Suffolk County all real and personal estate which before June 23, 1831, belonged to or was deemed to belong to said county should belong to and be vested in the city of Boston and the town of Chelsea should have no interest therein.   Rev. Sts. c. 143,

§ 2, provided that "fit and convenient . . . houses of correction" should be erected by the county commissioners in their respective counties and "by the mayor and aldermen in the city of Boston, at the charge of the said counties and city, respectively."

The institutions department was established by an ordinance of the city of Boston (c. 7, ordinances of 1920), under the authority conferred upon it by Spec. St. 1919, c. 222, to consolidate and reorganize the Boston infirmary department, the children's institutions department, the institutions registration department, and the penal institutions department. The executive and administrative head of the department is appointed by the mayor, is known as commissioner of institutions, and receives an annual salary, in accordance with acts of 1909, c. 486, § 5, which act is entitled "An Act relating to the administration of the city of Boston and to amend the charter of the said city." Under this act the mayor also appoints two deputy commissioners, who hold office, as does the commissioner, at the pleasure of the mayor, the appointments being subject to review and approval by the civil service commission. G. L. c. 31, § 2. The penal institutions commissioner of Boston is given authority to appoint a master, G. L. c. 126, § 16, to remove summarily officers using intoxicating liquors, G. L. c. 127, § 14, and to make rules governing the administration of the houses of correction, G. L. c. 124, § 1. The institutions department is within the provisions of Spec. St. 1915, c. 116, § 1, which reads "All appointments to positions at the house of correction of the penal institutions departments of the city of Boston shall hereafter be made in accordance with the civil service law and rules of the Commonwealth."

The many statutes cited by the respondents have as their aim the establishment of rules for the government of county institutions at large, as distinguished from the management of so called county institutions in the county of Suffolk, and we do not think it helpful to discuss them separately.

Considering all the statutes to which we have been referred or have found, we are of opinion that the city of Boston has full control of the management and regulation of the houses

of correction within the county of Suffolk as well as the legal title thereto. In each petition the ruling of the single judge that the petitioner could not be removed without compliance with the provisions of G. L. c. 31, § 26, was right.

*Writs of mandamus to issue as prayed for.*